dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

*Attorney for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL RYAN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>WILSHIRE LAW FIRM. P.L.C.<br>*Defendant.*<br><br><br>*DISCOVERY MATTER*<br><br>*PRESENTED TO MAGISTRATE JUDGE MARGO ROCCONI* | Case No. 2:24-cv-08816-CV-MAR<br><br>**PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT PURSUANT TO LR 37-2**<br><br>**Date and Time of Motion Hearing: June 11, 2025**<br><br>**Discovery Cutoff date:** [Not Yet Set]<br><br>**Pre-Trial Conference date:** [Not Yet Set]<br><br>**Trial date:** [Not Yet Set] |

# **INTRODUCTION**

Pursuant to LR 37-2, the Plaintiff Paul Ryan submits the following Stipulation and accompanying Notice of Motion to compel discovery responses for classwide calling records, which Defendants have failed to produce. Indeed, the Defendant has not produced complete calling data even for the named Plaintiff. Defendant was served the instant Discovery on February 13, 2025. *See* Exhibit 1. After the grant of a month's extension, Defendant responded to the discovery on April 16, 2025. This motion to compel follows nearly a month of meet and confers and correspondences regarding the missing call records. The only way to ensure that the documents will be received now is through a Court Order.

To ascertain the number of calls sent to the Plaintiff and the putative class, including by *two separate telephone service companies used by the Defendant*, and to ensure an expert analysis can be completed, including as to how many calls were made with prerecorded messages and to numbers which never consented or opted out, the Plaintiff is also moving to compel a complete response to Request for Production ("RFP") No. 17. The information sought through RFP No. 17 is *central* to the claims at issue here because it seeks the calling records outlining each of the calls Defendant sent to the Plaintiff and each class member. In a telemarketing case alleging violations of the TCPA, the Plaintiff is unquestionably entitled to this most

basic evidence outlining the telemarketing calls that the Defendant made that are the subject of the Complaint.

## BACKGROUND AND OVERVIEW

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls— 3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

Plaintiff has brought this action against Defendant Wilshire Law Firm for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making what third-party discovery has revealed to be close to 500 prerecorded telemarketing calls to his own cellular telephone number, without consent, and after having expressly requested they stop. *See* ECF No. 1. The Plaintiff is seeking to represent the following class:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number (2) Wilshire (or an agent acting on behalf of Wilshire) placed a call (3) within the four years prior to the filing of the Complaint (4) using a pre-recorded message.

*Id.* at ¶ 27. To explore the scope of the calling conduct, the Plaintiff served Defendant with discovery seeking, among other things, records of the calls they placed. Despite a meet and confer regarding the same, complete responses have not been provided with respect to the Plaintiff, let alone the entire putative class.

**MEET AND CONFER CERTIFICATION PURSUANT TO LR 37-1**

Counsel for the Plaintiff initiated the meet and confer process by email correspondence on April 22, 2025. The parties conducted an audiovisual meet and confer on April 30, 2025. With respect to the results of that meet and confer on the request at issue, the parties agreed to limit production to encompass non-clients of Wilshire owing to privilege issues. However, the parties could not agree as to the purposes or limitations of production, with Defendant being willing to produce the documents for mediation purposes only, a demand to which Plaintiff cannot agree.

**ISSUE 1: Records of Defendant's Telemarketing Calls are Relevant and Necessary to Discovery and Should be Produced.**

PLAINTIFF'S POSITION

Request for Production No. 17 seeks from Defendant:

> Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendor, including those made to the Plaintiff:
> a) the date and time;
> b) the caller ID;
> c) any recorded message used;
> d) the result;

    e) identifying information for the recipient; and any other information stored by the call detail records.

Exhibit 1. These documents are referred to as "Call Records". The Call Records Plaintiff seeks go to the heart of this matter, as in order to prove his and the Class claims, the Plaintiff must demonstrate that (1) the defendant called a cell phone; (2) using an artificial or prerecorded voice; (3) without the recipient's prior express consent. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 803-04 (9th Cir. 2017). As such, the calling records will establish whether cell phones will called, whether those calls were made with prerecorded voices, the number of calls, and can be cross-referenced with other evidence to establish whether consent existed.

Notably, the class Plaintiff pleads, by definition, is not limited to or even linked to consent, nor is it limited to persons, like Plaintiff, who also revoked any putative consent. As this is a class action, such information is relevant to the numerosity, commonality, typicality, and predominance elements of Rule 23 with respect to the claims and class definition and the calculation of class-wide damages, and to Defendant's affirmative defenses. It should not, therefore, be limited as to only those class members who revoked their consent.

As an initial matter, where defendants contest elements of Rule 23 in proposed class actions under the TCPA, courts routinely require the production of information necessary to support those requirements. *See, e.g.*, *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018)

("RFPs 10-13 and 18 are relevant at least to the issues of numerosity and commonality. The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a), for which plaintiff must show the class 'suffered the same injury ... such that the ... class claims will share common questions of law or fact" with those of the named plaintiffs.'"); *Mbazomo v. ETourandTravel, Inc.*, No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (compelling the production of call data because "the Court agrees with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to Plaintiff's need to show numerosity.") (cleaned up).

In the same vein, "[o]utbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable." *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at *1 (N.D. Tex. Oct. 10, 2019) (compelling the production of similar data sought here); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and

commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable.").

Not surprising, then, is that courts across the country, including in this circuit, routinely compel TCPA class action defendants to provide analogous information relevant to the sizes of proposed classes. As one court summarized when granting a motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014). Here, like *Mey*, the Plaintiff, or his expert, will determine which calls contain criteria which qualify them for membership in the class in order to prepare this case for class certification. Because the sought-after Call Records are plainly relevant to contested elements of Rule 23, including numerosity, this Court should compel their production.

Separately, the Defendant's production is also deficient, even to the extent that it pertains to the Plaintiff. In response to this request, Defendant produced a two-page spreadsheet entitled "Prerecorded Messages Sent to Paul Ryan," a redacted version of which is attached herein as <u>Exhibit B</u>, and indicated that it used two

services, Convoso and SlyDial, to make the calls. But Defendant didn't distinguish between what calls were placed with Convoso and which were placed with SlyDial, nor did the Defendant even produce the entire volume of calling conduct. To the contrary, a third-party subpoena to Convoso revealed almost 500 calls made to the Plaintiff *alone*, none of which appear on the Defendant's production, which is clearly incomplete. Even with respect to the Plaintiff, it is evident that the Defendant has not made a complete production. The Court should compel the Defendant to produce all the calling records in its possession or control, both with respect to the Class and the Plaintiff, with the Defendant permitted to redact records of calls made to its clients.

DEFENDANT'S POSITION

Wilshire objects to the request at issue because it is extremely overbroad and compels the production of privileged information.

First, the request is overbroad on its face. It calls for all outbound calling records for calls made by Wilshire and any of its vendors to any prospective client unlimited in time or scope. The overwhelming majority of these calls are not at issue due to the parameters of Plaintiff's own complaint and are therefore not relevant to this case. As Plaintiff admits, the only calls at issue are those that Wilshire made within the last four years, to a cell phone, using an artificial or prerecorded voice, without the recipient's prior express consent. Complaint ¶ 27.

Moreover, the purported class representative, Paul Ryan, asserts that he revoked his consent and continued to receive calls. Thus, it is Wilshire's position that the purported class is a "revocation class" and can only include consumers similarly situated to Ryan, who revoked their consent and continued to receive calls. On its face, Plaintiff's request, which seeks **all** telemarketing calls made by Wilshire or **any** of its vendors irrespective of time, type of phone, type of call, or consent or revocation status, is patently overbroad. Plaintiff does not require Wilshire's entire call history to establish its Rule 23 requirements for a putative class that is narrow in scope per the parameters of Plaintiff's own complaint.

The cases Plaintiff cites from other jurisdictions have no bearing on the appropriateness of the specific discovery request at issue here. The quotes Plaintiff cherry picks provide no information on the parameters of the putative classes at issue or the specificity of the discovery requests. In fact, the quote from *Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014) makes clear that the class at issue in that case included calls made to numbers on the National Do Not Call Registry and calls made using an automatic telephone dialing system, which encompass a much broader range of telemarketing calls than the prerecorded messages class at issue here. Plaintiff does not, and cannot, provide a basis for demanding all of Wilshire's call records when only a

very narrow subset of those calls fall within the purported class, which Plaintiff has not yet certified.

Further, this Request seeks information protected by the attorney/client privilege. This Request seeks not just call data such as date, time, and type of call, it requests the recorded message itself, identifying information of the recipient, "the result," and "any other information stored by the call detail records." These records will include the substantive messages sent to and received by Wilshire from current and prospective clients through Wilshire's vendors' platforms. These communications are textbook examples of privileged communications, as they are made in confidence for the purpose of securing legal advice from Wilshire. *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1069. Many of these communications also likely contain sensitive medical information provided to Wilshire by its prospective and current clients about those clients' potential personal injury cases.

Nevertheless, Wilshire already provided to Plaintiff a list of all prerecorded messages sent to Paul Ryan by its vendors. During counsel's meet and confer, Wilshire agreed to identify which calls were sent via which vendor. Wilshire also offered to produce all nonprivileged records of prerecorded messages sent during the class time period under a mediation privilege, and Plaintiff agreed. Wilshire disagrees that, at the meet and confer "the parties could not agree as to the purposes or limitations of production."

Dated: May 16, 2025

        RESPECTFULLY SUBMITTED, BY:

        <u>/S/ ANDREW ROMAN PERRONG</u>

        ANDREW ROMAN PERRONG
(*PRO HAC VICE*)
(A@PERRONGLAW.COM)
PERRONG LAW, LLC
2657 MOUNT CARMEL AVENUE
GLENSIDE, PA 19038
OFFICE: 215-225-5529


        TROUTMAN PEPPER LOCKE LLP


By: */s/ Chad R. Fuller*
   Chad R. Fuller
   Jessamyn E. Vedro
   Virginia Flynn (pro hac vice)
   Christine Nowland
   Attorneys for Defendant
   WILSHIRE LAW FIRM, P.L.C.

## ATTESTATION OF SIGNATURE

Pursuant to Central District Local Rule 5-4.3.4(a)(2)(i), I hereby certify that the content of this document is acceptable to counsel for Defendants, and I obtained their authorization to affix their electronic signatures to this document.

Dated: May 16, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that, on May 16, 2025, I caused the foregoing to be electronically filed with the Clerk using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Andrew R. Perrong*
Andrew R. Perrong